**UNITED STATES of America**

v.

**Virginia FRIED, Brianne Goldstein, Rose De Angelis, Robert De Angelis, and Apartment Development and Management, Inc., Defendants.**

No. 77 Cr. 894.

United States District Court,
S. D. New York.

March 23, 1978.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for United States; Mi-chael S. Devorkin, Asst. U. S. Atty., New York City, of counsel.

Stanley S. Arkin P.C., New York City, for defendants, Virginia Fried, Apartment Development and Management, Inc.; Stanley S. Arkin, Mark S. Arisohn, New York City, of counsel.

Patterson, Belknap, Webb & Tyler, New York City, for defendant Brianne Goldstein; Rudolph W. Giuliani, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

One defendant is named in all counts of the 35-count indictment, the others in only 34. The defendants are Apartment Development and Management, Inc. ("ADAM"), its manager, Virginia Fried, and three others of its employees, Brianne Goldstein, Rose De Angelis, and Robert De Angelis.[1] A motion now to be granted seeks dismissal of Counts 2 through 34.

The first count, which is concededly valid on its face, charges a conspiracy, and must be summarized as background for the issues to be resolved today.[2] The gist of the alleged conspiracy is a fraudulent scheme to supply false information concerning prospective tenants for a federally subsidized apartment complex, the result of the frauds being to obtain rent subsidies, at the ultimate expense of the Federal Government, for ineligible tenants. ADAM had been hired as rental agent by the owners of the apartment complex, called Independent Plaza North ("IPN"). When difficulty was encountered in renting the apartments, the owners obtained a rent subsidy designation under Section 236 of the National Housing Act, 12 U.S.C. § 1715z–1. The effect of this designation was to reduce the owners' mortgage costs, in return for which eligible tenants with low or moderate incomes were to be charged reduced rents. In order to demonstrate eligibility for these reductions,

---

1. Ms. and Mr. De Angelis, mother and son, have entered guilty pleas to the first (conspiracy) count.

2. Count 35, naming only one of the defendants, is an obstruction of justice charge which has been sustained against separate attacks and does not require discussion herein.

tenants were required to complete various forms, including eligibility applications, Federal Housing Administration Form 3131, which gave pertinent financial information, and to submit supporting documentation. ADAM would then obtain a verification in the form of a credit report, and forward the papers to the New York City Housing Development Administration ("HDA"), and the United States Department of Housing and Urban Development ("HUD"). Tenants with incomes above the eligibility level could rent apartments at IPN, but were supposed to pay higher, "fair market rents." The owners were under a duty to remit any excess received over the subsidized rent level to the United States. ADAM was required to make monthly reports of such excess rentals on a HUD form entitled Monthly Report of Excess Income.

The conspiracy count goes on to allege, *inter alia*, that the conspirators schemed, and then proceeded to implement the scheme, to counsel tenants on the supplying of false information and manufacturing of false supporting documents; and that defendants arranged for credit reports purportedly verifying, but not actually verifying, the falsified data; forwarded the false applications and reports to HDA and HUD; failed to collect fair market rents from tenants falsely certified as eligible for subsidies; and sent Monthly Reports of Excess Income which were fraudulent in that they reported the artificially reduced level of excess income received, whereas this amount would have been higher but for the illicit scheme.

Counts 2–17 follow a familiar form of pleading, combining economy of language with a fearsome accumulation of charges through the devices of incorporation by reference and a stark catalog of charges, occupying one line apiece and carrying on each line a potential of five years in prison and $10,000 in fines. These counts read in full as follows:

"1. Each of the allegations set forth in Count One of this Indictment is realleged as if set forth here in detail.

"2. On or about the dates hereinafter set forth in Counts Two through Seventeen of this Indictment, in the Southern District of New York, VIRGINIA FRIED, BRIANNE GOLDSTEIN and ADAM, the defendants, in a matter within the jurisdiction of a department and agency of the United States, to wit, the Department of Housing and Urban Development, unlawfully, wilfully and knowingly did falsify, conceal and cover up material facts by trick, scheme and device, and did make and aid, abet, counsel, command, induce, procure and cause to be made false, fictitious and fraudulent statements and representations in the applications for the apartments hereinafter set forth in Counts Two through Seventeen, which were sent to HUD for an apartment at IPN with a rent subsidized by the United States under the 236 program:

| "COUNT | APARTMENT (Building) | APPROXIMATE DATE OF INITIAL OCCUPANCY OF SUBSIDIZED APARTMENT |
|---|---|---|
| 2 | 21 J (1) | December 1, 1975 |
| 3 | 23 C (3) | December 1, 1975 |
| 4 | 31 F (9) | November 17, 1975 |
| 5 | 23 G (9) | November 1, 1975 |
| 6 | 35 G (1) | January 1, 1976 |
| 7 | 25 K (9) | November 25, 1975 |
| 8 | 17 C (3) | December 1, 1975 |
| 9 | 340 A (7) | December 1, 1975 |
| 10 | 38 F (1) | February 1, 1976 |
| 11 | 18 C (1) | December, 1975 |
| 12 | 37 C (1) | November 1, 1975 |
| 13 | 324 A (8) | November 1, 1975 |
| 14 | 33 J (1) | November 1, 1975 |
| 15 | 39 F (1) | November 1, 1975 |
| 16 | 33 J (9) | November 1, 1975 |
| 17 | 26 J (1) | November 1, 1975 |

(Title 18, United States Code, Sections 1001 and 2.)"

Counts 18–34 are in the same pleading genre as Counts 2–17. These relate to the excess income reports. They allege:

"1. Each of the allegations set forth in Counts One through Seventeen of the Indictment is realleged as if set forth here in detail.

"2. On or about the dates hereinafter set forth, in the Southern District of New York, VIRGINIA FRIED, BRIANNE GOLDSTEIN and ADAM, the defendants, in a matter within the jurisdiction of a

department and agency of the United States, to wit, the Department of Housing and Urban Development, unlawfully, wilfully and knowingly did falsify, conceal and cover up material facts by trick, scheme and device, and did make and aid, abet, counsel, command, induce, procure and cause to be made false, fictitious and fraudulent statements and representations in the Monthly Reports of Excess Income hereinafter set forth in Counts Eighteen through Thirty-four, which were sent by ADAM to HUD for the 236 program at IPN:

| "COUNT | DATE OF REPORT | PERIOD COVERED BY REPORT |
|---|---|---|
| 18 | February 6, 1976 | September, 1975 |
| 19 | March 26, 1976 | October, 1975 |
| 20 | March 26, 1976 | November, 1975 |
| 21 | March 26, 1976 | December, 1975 |
| 22 | March 26, 1976 | January, 1976 |
| 23 | March 26, 1976 | February, 1976 |
| 24 | April 13, 1976 | March, 1976 |
| 25 | May 13, 1976 | April, 1976 |
| 26 | June 16, 1976 | May, 1976 |
| 27 | July 13, 1976 | June, 1976 |
| 28 | August 31, 1976 | July, 1976 |
| 29 | October 12, 1976 | August, 1976 |
| 30 | November 10, 1976 | September, 1976 |
| 31 | November 18, 1976 | October, 1976 |
| 32 | December 18, 1976 | November, 1976 |
| 33 | January 18, 1977 | December, 1976 |
| 34 | February 18, 1977 | January, 1977 |

(Title 18, United States Code, Sections 1001 and 2)."

## I.

Moving to dismiss Counts 2–17, defendants point out, correctly, that there is no allegation in any of these counts of the specific respect or respects in which the application for the apartment referred to on any particular line was false. The Government counters that its incorporation by reference of the conspiracy count embraces assertions of some six or more respects— understating tenants' salary, omitting other income, listing false documents, applying in false names, etc.—in which defendants caused false information to be given. In any event, the prosecution adds, the specific details are available in a bill of particulars,

so defendants will know precisely what they must meet. Finally, the Government argues that 18 U.S.C. § 1001 forbids any fraudulent "scheme," defendants are in effect charged with such a scheme, and so it was not necessary to refer to specific documents or statements at all, these being merely "means" of carrying out the scheme.[3]

■ The court finds the Government's contentions insufficient. Long lists of counts like the ones here have become staples in this courthouse. They trip lightly off the typewriter. They are liable to pass swiftly before our busy grand juries. Yet each line on the roster avers a grave felony, carrying a prison sentence of up to five years and a $10,000 fine. There is compelling reason to demand that a line or two (even three or four) be added to each count to state precisely what in the allegedly felonious paper is claimed to have been false.

Each of the questioned documents, on the Government's submissions, could have been listed because the grand jurors found in it any one or more of at least six false entries. Or different grand jurors could have had different things in mind so that the requisite number never agreed on any one item as being shown to supply probable cause for the charge of wilful falsity. We do not know in any instance what any one or more of the grand jurors knew or believed or voted on, or, indeed, whether the list of 16 counts was ever taken one at a time to specify what was false on each or any of them. Cf. *United States v. Natelli*, 527 F.2d 311, 325 (2d Cir. 1975), cert. denied, 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976).

The offer to supply the omissions by a bill of particulars is not satisfactory. The bill will tell us only what the prosecution is prepared to charge now, not what the grand jurors, or some or any of them, thought they were charging when they vot-

3. This last suggestion is tendered modestly, in a footnote, and is suitably handled in similar form. It seems sufficient to say that while a different indictment might have charged a scheme, without mentioning documents, Counts 2–17 of *this* indictment are about documents, and must be appraised accordingly. The same thought is expressed by the Government, and a similar response applies, with respect to Counts 18–34.

ed the indictment. As was said in *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962):

" * * * To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."

Thus, the vice in the counts under consideration is more profound than a matter of pleading niceties. It constitutes, notwithstanding all the good intentions in the world, a confused and confusing method of purportedly guiding the grand jury. It renders impossible any acceptable degree of confidence that the grand jury genuinely knew what it was doing, and genuinely did what the Government would now tell us was done, when it agreed to the list. The right to a grand jury's solemn judgment is too important to deem it satisfied in such a conjectural fashion.

## II.

■ Counts 18–34 present a different, somewhat unusual type of problem. Despite all the other words that might suggest other things, the gist of the counts on this second listing is that there were "false, fictitious and fraudulent statements and representations in the Monthly Reports of Excess Income" thereafter enumerated. The trouble with these charges, as is evident from the rest of the indictment and the Government's candid concession in an informal bill of particulars, is that there is not even claimed to be any literally false statement in any of the listed Reports.

The purpose of the Report of Excess Income was, as its name imported, to show how much the owner was collecting from apartments not eligible for subsidy and thus bearing rentals above the subsidized level. The Government alleges against defendants the grievance that they were falsely reporting apartments actually ineligible for subsidy as being subsidized, and, as part of the fraud, "failing to collect fair market rents" for these apartments. It is undisputed, however, that the report forms giving rise to Counts 18–34 showed accurately the rentals defendants were in fact collecting, neither less nor more. Thus, although the forms reported collections which, on the Government's allegations, should have been higher, the forms accurately stated what the collections actually were.

In these undisputed circumstances, it is not permissible to charge that the *Reports* were "false, fictitious and fraudulent," and Counts 18–34 must be dismissed. It makes no difference that the Reports played a part in an alleged course of business infected with fraud. Nor does it matter that if a fraudulent scheme had not been under way, defendants (1) would have collected more rent and (2) would have shown more rent on the forms. Defendants, it is conceded, did not collect more rent. They reported accurately what they collected. The fact that these forms, in different circumstances, would have shown different numbers (i. e., the rents properly collectible on the prosecution's hypothesis) cannot sustain the addition of 15 such counts to the indictment. Otherwise, any piece of paper delivered to the Government which, had things been otherwise, might have given honest and useful information would ground a felony for failing to do so even if nothing it reported was literally false.

The defect is not cured by the Government's point, valid in a proper case, that falsity may consist in a material omission. There is no suggestion of any reportable "fact" omitted from the forms in question. There was no place on the form for confessing that the rentals actually being collected would, but for some wrongdoing, have been higher. The forms listed accurately what they were required to list.

This does not mean, of course, that the fraudulent scheme was not reachable at all by the criminal law. The Government has undertaken to reach it in the conspiracy

count, which still stands. Charges differently formulated might well lie under 18 U.S.C. § 1001, though they might not generate a list of the length our prosecutors tend to admire. Eschewing further dicta of this sort, the court is obliged to rule on what is before it. Performing this task, the court finds Counts 18–34 invalid.

In sum, for the reasons stated, Counts 2–34 of the indictment are dismissed. So ordered.